UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| TOP KICK PRODUCTIONS, INC., )<br>)<br>Petitioner, )<br>)<br>)<br>v. )<br>)<br>CHRIS LEWIS, )<br>)<br>Respondent. )<br>) | No. 6:21-CV-52-CHB-HAI<br><br>RECOMMENDED DISPOSITION |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On May 3, 2022, the Court stayed this matter pending the resolution of Respondent's bankruptcy petitions. D.E. 34. Petitioner reports that the petitions have been dismissed. D.E. 37, 38, 40. Accordingly, the stay will be lifted, and the petition [D.E. 1] and motion to confirm the arbitration award [D.E. 22] are ripe for review. D.E. 1, 22. The motion to confirm the award has been referred to the undersigned. D.E. 30.

**I.**

On March 30, 2021, Top Kick Productions, Inc., ("Petitioner") filed a petition to confirm the Final Award of Arbitrator ("the Award") issued on July 2, 2020. D.E. 1. The Court granted the parties' request to allow Chris Lewis ("Respondent") to respond to the petition by May 5, 2021. D.E. 13. No response was filed, and, on May 20, 2021, Petitioner filed a reply indicating that the parties had "reached an impasse regarding any potential resolution of this matter." D.E. 14 at 2. On February 23, 2022, Petitioner moved the Court

to enter an order confirming the Award. D.E. 22. On March 18, 2022, Respondent filed a response to Petitioner's motion. D.E. 24.

In its petition and motion, Petitioner explains that, in July 2019, it entered into a personal appearance contract with Bubba Fest, LLC. D.E. 1 at 2. The contract provided that Chuck Norris would travel from Houston, Texas to appear at Bubba Fest, "a fan convention in Knoxville, Tennessee." *Id.* The contract also includes the following arbitration clause:

> The Parties further agree that any controversy or claim arising out of or related to this Contract shall be settled by arbitration through the American Arbitration Association pursuant to its Commercial Arbitration Rules, and any such judgment rendered shall be entered into any court of competent and proper jurisdiction.

D.E. 1-1 at 4. According to the petition, Bubba Fest was not an organized legal entity until August 22, 2019. D.E. 1 at 2. Thus, Respondent, Bubba Fest's manager, became personally liable under the contract when he signed it on behalf of the organization. *Id.*; *see also* D.E. 1-1. Although Mr. Norris appeared at the convention as agreed, neither Respondent nor Bubba Fest paid Petitioner the amount due under the contract. D.E. 1 at 3.

Petitioner then initiated an arbitration action against Respondent and Bubba Fest. *Id.* However, the arbitration proceeded only against Respondent after Bubba Fest filed a Chapter 7 bankruptcy petition. *Id.* The final arbitration hearing was held on May 12, 2020. D.E. 1-2 at 3. Despite receiving prior notice of the hearing and the American Arbitration Association's attempts to include Respondent via telephone, he failed to participate in the final arbitration hearing. *Id.* On July 2, 2020, the "Award" was issued, which provides that Respondent shall pay Petitioner $164,017.39, with post-award interest of 5% per

annum from the date of the Award until paid in full. *Id.* 3-4. The Award also provides that, if it is reduced to a judgment, post-judgment interest shall accrue on the amounts awarded at the rate of 5% per annum until paid in full. *Id.* at 3-4. Finally, the Award provides that Respondent shall pay $11,630.00 in arbitration fees to Petitioner. *Id.* at 4.

On March 30, 2021, Petitioner filed a petition to confirm the Award. D.E. 1. The petition indicates that Respondent did not move to vacate, modify, or correct the Award within three months after its entry. D.E. 1 at 4.

## II.

The Federal Arbitration Act ("FAA") provides:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9. "It is well established that courts should play only a limited role in reviewing the decisions of arbitrators." *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000) (quoting *Shelby Cty. Health Care Corp. v. Am. Fed'n of State, Cnty. & Mun. Emps., Loc. 1733*, 967 F.2d 1091, 1094 (6th Cir.1992)). The FAA "expresses a presumption that arbitration awards will be confirmed." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005) (citing 9 U.S.C. § 9; *Anderson, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 328 (6th Cir. 1998)). "When courts are called on to review an arbitrator's decision, the review is very narrow; one of the narrowest standards of judicial review in all of American jurisprudence." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 625

(6th Cir. 2002) (quoting *Lattimer–Stevens Co. v. United Steelworkers*, 913 F.2d 1166, 1169 (6th Cir.1990)).  However:

> A court may vacate an arbitration award in the following situations: (1) where the award was procured by fraud, (2) where the arbitrators were evidently partial or corrupt, (3) where the arbitrators misbehaved so that a party's rights were prejudiced, or (4) where the arbitrators exceeded their powers or executed them so that a final, definite award was not made.

*Dawahare*, 210 F.3d at 669 (citing 9 U.S.C. § 10(a)).  "Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."  9 U.S.C. § 12.  Further, to warrant vacation of an arbitration award based on either fraud or undue means, "the movant must demonstrate: '(1) clear and convincing evidence of fraud, (2) that the fraud materially relates to an issue involved in the arbitration, and (3) that due diligence would not have prompted the discovery of the fraud during or prior to the arbitration.'"  *Bauer v. Carty & Co., Inc.*, 246 F. App'x. 375, 377 (6th Cir. 2007) (quoting *Int'l Bhd. of Teamsters, Local 519 v. United Parcel Serv., Inc.*, 335 F.3d 497, 503 (6th Cir. 2003)).

On February 23, 2022, Petitioner moved the Court for an order confirming the Award.  D.E. 22.  On March 18, 2022, despite failing to file any response to the petition, Respondent filed a response to Petitioner's motion alleging that Petitioner and Petitioner's counsel participated in an "unlawful conspiracy" against him.  D.E. 22 at 1.  The response also states that Petitioner and Petitioner's counsel have "engaged in a pattern of abuses of legal process . . . to gain an unfair advantage in business disputes . . . and to conceal [a] myriad of unlawful acts."  *Id.* at 2.  Respondent alleges that Petitioner and Petitioner's counsel "sought and enjoyed the assistance" of Ernest Shell, who he claims has committed multiple crimes.  *Id.*  Respondent also asserts that he met with Shell on July 17, 2021,

4

during which he admitted to stalking Respondent's family and made heinous threats against them. *Id.* at 4. Respondent alleges that he and his family fled their home after this meeting and at Shell's direction. *Id.* Respondent alleges that Petitioner had knowledge of these events. *Id.*

Respondent further asserts that Shell "made public Facebook posts sharing the name and image of [Petitioner's] owner, Chuck Norris, tagging both the FBI and United States Marshals Service, referencing [Respondent's] and [Petitioner's] dispute." *Id.*

Respondent fails to show how any of the grounds to vacate an arbitration award apply to this matter. Indeed, Respondent's filing does not even specify that he seeks to vacate the Award. Rather, Respondent requests the Court " to refrain from entering any order in light of . . . the clearly unlawful actions of [Petitioner] and others." D.E. 24 at 5. As the allegations involve Petitioner, rather than the arbitrator, it is possible Respondent intended to allege that the Award was procured by corruption, fraud, or undue means. However, under the FAA, Respondent had until April 2, 2020, to move to vacate, modify, or correct the Award. 9 U.S.C. § 12. To the extent his filing at Docket Entry 24 can be construed as a motion to vacate the Award, Respondent failed to make such a request until March 18, 2022, 715 days after the deadline. D.E. 24. Thus, any request by Respondent to vacate the award is untimely and should be denied.

Further, even if it had been timely filed, Respondent has failed to show by clear and convincing evidence that any fraud or undue means to procure the award occurred, how any of the allegations materially relate to an issue involved in the arbitration, or that due diligence would not have prompted the discovery of the fraud or undue means during or prior to the arbitration. Rather, Respondent's filing at Docket Entry 22 only involves vague

5

allegations involving Shell. The few, generalized facts that Respondent provides involve events that occurred **after** the Award was issued. Further, Respondent fails to explain how any of the events materially relate to the Award or the underlying arbitration proceedings. The only indication that any of Respondent's allegations occurred prior to the Award's issuance is his assertion that the "conspirators' actions . . . [have] lasted nearly three years." D.E. 24 at 5. Such a vague statement is a far cry from clear and convincing evidence of fraud or undue means. Moreover, if true, this supports that Respondent was aware of the alleged events during or prior to the arbitration but failed to raise them.

To the extent Respondent requests to vacate or modify the Award, this request is very untimely. Respondent had ninety days from the issuance of the Award to make such a motion but failed to do so. Even if timely, assuming his response at Docket Entry 24 was intended to make such allegations, Respondent has failed to meet his burden of showing that the Award was procured by fraud or undue means. Thus, the Award should be confirmed.

### III.

Accordingly, **IT IS HEREBY ORDERED** that the stay is **LIFTED**. The undersigned further **RECOMMENDS** that the Award be **CONFIRMED** and Petitioner's motion for order (D.E. 22) be **DENIED** as **MOOT**. To the extent Respondent's response at Docket Entry 24 moves to vacate the Award, this motion should be **DENIED**.

The Court notes that, under Local Rule 5.3(e), respondent is required to provide written notice to the Clerk and the Petitioner of any change in residential and, if different, mailing address. The Court is aware that Respondent was placed in USMS custody on January 24, 2022, due to his conviction in *United States v. David Christopher Lewis*, case

number 6:21-CR-48, and has recently been sentenced to a significant period of incarceration. He filed his response (D.E. 24) after being remanded into USMS custody and was notified of his obligation to provide notice of change of address a few days later. D.E. 25. Thus, the Court knows that there has been a change of address, but no notice has been provided by Respondent. Therefore, **IT IS FURTHER ORDERED** that the Clerk **SHALL** serve this Recommended Disposition on Respondent at both his address of record in this case and where he is currently housed, specifically the Laurel County Correctional Center, 440 Hammock Road, London, Kentucky 40744.

Any objection to this recommendation must be asserted in response to this Recommended Disposition. The Court directs the parties to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 3rd day of August, 2022.



Signed By:
*Hanly A. Ingram*
United States Magistrate Judge